UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON PATRICK MARTIN,   )<br>  )<br>        Petitioner,   )<br>  )<br>  v.   )<br>  )<br>  )<br>SUSAN L. HUBBARD, Warden,   )<br>  )<br>        Respondent.   )<br>  ) | 1:08-CV-00949 OWW SMS HC<br><br>FINDINGS AND RECOMMENDATION REGARDING RESPONDENT'S MOTION TO DISMISS<br><br>[Doc. #19] |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, following his conviction by jury trial on March 11, 1991, of attempted murder with infliction of great bodily injury with personal use of a knife, assault with a deadly weapon with infliction of great bodily injury, and robbery by means of force or fear with infliction of great bodily injury and personal use of a knife. See Lodged Docs.

Nos. 1 and 2.[1] On April 12, 1991, Petitioner was sentenced to serve an indeterminate term of life with the possibility of parole, plus a consecutive term of fourteen years. Id.

Petitioner appealed the conviction to the California Court of Appeals, Fifth Appellate District. On May 26, 1992, the appellate court affirmed the judgment. See Lodged Doc. No. 2. Petitioner then filed a petition for review in the California Supreme Court. See Lodged Doc. No. 3. On August 12, 1992, the petition was summarily denied. See Lodged Doc. No. 4.

Petitioner filed twelve post-conviction collateral challenges with respect to the judgment in the state courts as follows:

1.  California Supreme Court
    Filing: Petition for writ of habeas corpus;
    Filed: November 12, 1995[2];
    Denied: March 27, 1996;

2.  Fresno County Superior Court
    Filing: Motion requesting court make recommendation to Director of California Department of Corrections to initiate recall of sentence;
    Filed: October 10, 1998;
    Denied: October 23, 1998;

3.  California Court of Appeals, Fifth Appellate District
    Filing: Notice of appeal;
    Filed: November 2, 1998;
    Denied: March 21, 2000;

4.  Fresno County Superior Court
    Filing: Petition for writ of habeas corpus;
    Filed: March 17, 2003;
    Denied: March 27, 2003;

5.  California Court of Appeals, Fifth Appellate District
    Filing: Petition for writ of habeas corpus;
    Filed: December 23, 2003;
    Denied: January 8, 2004;

6.  Fresno County Superior Court
    Filing: Petition for writ of habeas corpus;

---

[1] "Lodged Doc." refers to the documents lodged by Respondent in support of her motion to dismiss.

[2] In Houston v. Lack, the Court held that a pro se habeas petitioner's notice of appeal is deemed filed on the date of its submission to prison authorities for mailing, as opposed to the date of its receipt by the court clerk. Houston v. Lack, 487 U.S. 266, 276, 108 S.Ct. 2379, 2385 (1988). The Ninth Circuit has applied this rule to assess the timeliness of federal habeas filings under the AEDPA limitations period. Huizar v. Carey, 273 F.3d 1220, 1222, (9th Cir. 2001), citing Houston v. Lack, 487 U.S. 266, 276, 108 S.Ct. 2379, 2385 (1988). Therefore under the mailbox rule, the Court deems the petitions filed on the dates Petitioner presumably signed the petitions and handed them to prison authorities for mailing, as opposed to the actual dates of filing.

Filed: February 13, 2005;
Denied: March 16, 2005;

7. <u>Fresno County Superior Court</u>
Filing: Petition for writ of habeas corpus;
Filed: April 10, 2006;
Denied: May 5, 2006;

8. <u>California Court of Appeals, Fifth Appellate District</u>
Filing: Petition for writ of habeas corpus;
Filed: August 11, 2006;
Denied: March 1, 2007;

9. <u>California Supreme Court</u>
Filing: Petition for review;
Received: March 26, 2007;
Returned unfiled as untimely: April 3, 2007;

10. <u>California Supreme Court</u>
Filing: Petition for writ of habeas corpus;
Filed: May 1, 2007;
Denied: October 31, 2007;

11. <u>Fresno County Superior Court</u>
Filing: Motion requesting court make recommendation to the CDCR Director to initiate recall of sentence;
Filed: May 29, 2007;
Denied: June 29, 2007;

12. <u>California Court of Appeals, Fifth Appellate District</u>
Filing: Notice of appeal;
Filed: July 12, 2007;
Denied: October 26, 2007.

<u>See</u> Lodged Docs. Nos. 7-31.

On July 7, 2008, Petitioner filed the instant federal petition for writ of habeas corpus in this Court. On October 2, 2008, Respondent filed a motion to dismiss the petition as being filed outside the one-year limitations period prescribed by 28 U.S.C. § 2244(d)(1). Petitioner filed an opposition to Respondent's motion to dismiss on November 10, 2008. On December 23, 2008, Respondent filed a reply to Petitioner's opposition.

**DISCUSSION**

A. <u>Procedural Grounds for Motion to Dismiss</u>

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a respondent can file a motion to dismiss after the court orders a response, and the Court should use Rule 4 standards to review the motion. See Hillery, 533 F. Supp. at 1194 & n. 12.

In this case, Respondent's motion to dismiss is based on a violation of 28 U.S.C. 2244(d)(1)'s one-year limitations period. Because Respondent's motion to dismiss is similar in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default and Respondent has not yet filed a formal answer, the Court will review Respondent's motion to dismiss pursuant to its authority under Rule 4.

B.  Limitation Period for Filing a Petition for Writ of Habeas Corpus

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"). The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586 (1997).

In this case, the petition was filed on July 7, 2008, and therefore, it is subject to the provisions of the AEDPA. The AEDPA imposes a one-year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, § 2244, subdivision (d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if

> the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In most cases, the limitations period begins running on the date that the petitioner's direct review became final. In this case, the petition for review was denied by the California Supreme Court on August 12, 1992. Thus, direct review concluded on November 10, 1992, when the ninety (90) day period for seeking review in the United States Supreme Court expired. Barefoot v. Estelle, 463 U.S. 880, 887 (1983); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999); Smith v. Bowersox, 159 F.3d 345, 347 (8th Cir.1998). Insofar as direct review became final prior to the effective date of the statute of limitations, Petitioner had one year commencing from the effective date of the statute of limitations, April 24, 1996, until April 25, 1997, absent applicable tolling, in which to file his federal petition for writ of habeas corpus. However, Petitioner delayed filing the instant petition until July 7, 2008, over eleven years beyond the due date. Absent any applicable tolling, the instant petition is barred by the statute of limitations.

C.  Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one year limitation period. 28 U.S.C. § 2244(d)(2). In Carey v. Saffold, the Supreme Court held the statute of limitations is tolled where a petitioner is properly pursuing post-conviction relief, and the period is tolled during the intervals between one state court's disposition of a habeas petition and the filing of a habeas petition at the next level of the state court system. 536 U.S. 214, 215 (2002); see also Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999), *cert. denied,* 120 S.Ct. 1846 (2000). Nevertheless, state petitions will only toll the one-year

statute of limitations under § 2244(d)(2) if the state court explicitly states that the post-conviction petition was timely or was filed within a reasonable time under state law. Pace v. DiGuglielmo, 544 U.S. 408 (2005); Evans v. Chavis, 546 U.S. 189 (2006). Claims denied as untimely or determined by the federal courts to have been untimely in state court will not satisfy the requirements for statutory tolling. Id.

As stated above, the statute of limitations began to run on April 24, 1996. Petitioner filed a petition in the California Supreme Court prior to that date on December 15, 1995. Because the filing preceded the commencement of the limitations period, the petition had no tolling consequences. Hill v. Keane, 948 F.Supp. 157, 159 (E.D.N.Y. 1997). Petitioner next filed a motion on October 10, 1998, in the Fresno County Superior Court requesting the court to make a recommendation to the Director of California's Department of Corrections to initiate recall of the sentence. Petitioner is not entitled to any tolling for the interval between the two state requests for relief, because Petitioner was not proceeding to the next appellate level. Nino v. Galaza, 183 F.3d 1003, 1006-07 (9th Cir.1999); see also Delhomme v. Ramirez, 340 F.3d 817, 821 n.3 (9th Cir.2003). In addition, the Fresno County Superior Court specifically denied the motion as untimely. Pursuant to Pace, the action was not properly filed and therefore had no tolling consequences. Since the limitations period ended on April 25, 1997, all subsequent petitions had no tolling effect. Green v. White, 223 F.3d 1001, 1003 (9th Cir.2000) (Petitioner is not entitled to tolling where the limitations period has already run); see also Webster v. Moore, 199 F.3d 1256 (11th Cir.2000); Rendall v. Carey, 2002 WL 1346354 (N.D.Cal.2002). The Court further notes that several of the subsequent petitions were denied as untimely and were therefore not properly filed.

D.  Later Start Date of Limitations Period Pursuant to 28 U.S.C. § 2244(d)(1)(D)

In his opposition, Petitioner contends that pursuant to 28 U.S.C. § 2244(d)(1)(D), the limitations period should not commence until May 20, 2005, when Petitioner allegedly acquired newly discovered evidence from the district attorney that Petitioner states was wrongfully withheld from him. Section 2244(d)(1)(C) states the limitations period commences on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

As argued by Respondent, however, even assuming a later start date of May 20, 2005, the instant petition is untimely. From May 20, 2005, until May 20, 2006, Petitioner filed only one state petition. On April 10, 2006, he filed a petition for writ of habeas corpus. That petition was denied on May 5, 2006. If Petitioner were granted tolling for this action, the limitations period would be extended by 26 days, to June 15, 2006. The next state habeas petition was not filed until August 15, 2006, which was over two months after the limitations period had already expired. Pursuant to the Supreme Court's rulings in Saffold and Chavis, Petitioner is entitled to gap tolling for the interval between these two petitions only if Petitioner did not unreasonably delay. Saffold, 536 U.S. at 225; Chavis, 546 U.S. at 197.

In the absence of "clear direction or explanation" from the state court indicating whether the state petition was timely, the federal court "must itself examine the delay . . . and determine what the state courts would have held in respect to timeliness." Chavis, 546 U.S. at 197. In Chavis, the Supreme Court found a period of six months filing delay to be unreasonable under California law. Id. at 201. The Supreme Court stated, "Six months is far longer than the 'short period[s] of time,' 30 to 60 days, that most States provide for filing an appeal to the state supreme court." Id., *quoting* Saffold, 536 U.S. at 219. In addition, the Supreme Court provided the following guidance for determining timeliness:

> [T]he Circuit must keep in mind that, in Saffold, we held that timely filings in California (as elsewhere) fell within the federal tolling provision *on the assumption* that California law in this respect did not differ significantly from the laws of other States, i.e., that California's 'reasonable time' standard would not lead to filing delays substantially longer than those in States with determinate timeliness rules.

Chavis, 546 U.S. at 199-200, *citing* Saffold, 536 U.S. at 222-223.

Here, Petitioner's delay of 101 days is unreasonable. The delay is far greater than the short period of time of 30 to 60 days provided by most States for filing an appeal. Therefore, assuming Petitioner is granted a later start date under § 2244(d)(1)(D), the instant petition filed on July 7, 2008, was filed over two years after the limitations period expired and is still untimely.

E.  Actual Innocence

Petitioner attempts to circumvent the statute of limitations bar by claiming actual innocence. Neither the Supreme Court nor the Ninth Circuit has decided whether an actual innocence exception

1 exists for the statute of limitations. However, even if the Constitution requires such an exception,
2 Petitioner fails to meet the standard.

3 First, Petitioner did not pursue his actual innocence claim with reasonable diligence.
4 Petitioner asserts he did not discover the evidence showing he is innocent until May 20, 2005. If that
5 is the case, he delayed almost an entire year before seeking redress in the Fresno County Superior
6 Court on April 10, 2006. In addition, upon conclusion of Petitioner's various state filings, he then
7 delayed filing the instant federal petition for over eight months. Given Petitioner's unreasonable
8 delays in pursuing relief, any actual innocence exception is unavailable now.

9 Second, Petitioner has completely failed to demonstrate a credible claim of actual innocence.
10 In Schlup v. Delo, 513 U.S. 298, 327 (1995), the Supreme Court set forth the actual innocence
11 standard in the procedural default context. The Schlup court stated that the actual innocence
12 exception is satisfied where the petitioner demonstrates that a constitutional violation has probably
13 resulted in the conviction of one who is actually innocent. Id. Further, the petitioner must
14 demonstrate that in light of the evidence no reasonable juror would have found him guilty. Id. at 329.
15 The district court is free to consider all of the evidence, including that alleged to have been illegally
16 excluded or to have become available only after trial. Id. at 327-328.  However, examples of
17 evidence that may establish factual innocence include credible confessions by another, trustworthy
18 eyewitness testimony, and exculpatory scientific evidence. Sawyer v. Whitley, 505 U.S. 333, 340
19 (1992); Schlup, 513 U.S. 298; Pitts v. Norris, 85 F.3d 348, 351 (8th Cir.1996).  As Respondent
20 correctly points out, the evidence against Petitioner presented at trial was overwhelming, and the
21 evidence he now submits is not credible or trustworthy.

22 The victim identified Petitioner as the perpetrator. See Lodged Doc. No. 33 at 295. She
23 stated she had known him as an employee of the steam cleaning company that cleaned the vents at
24 the restaurant where she worked. Id. at 292-293. Petitioner would come once a month to the
25 restaurant after the store was closed, obtain the keys, go up into the roof, and clean the vents. Id. at
26 293. On the night in question, Petitioner showed up at the restaurant at approximately 2:00 a.m. to
27 3:00 a.m. Id. at 293-294. He knocked on the door and showed the victim the keys to the trap door in
28 the roof that had been missing for the past month. Id. at 294-295. The victim opened the door and let

1  Petitioner in. Id. at 300. Petitioner then told her that he had been fired. Id. The victim asked
2  Petitioner his name so she could leave a note with her manager to see if he could be rehired, and
3  Petitioner told her his name was "Aaron." Id. Petitioner then pulled out a knife and told her "he had
4  come to get his compensation." Id. at 301. He slashed her throat and then stabbed her about the head,
5  neck, arms, and side approximately 30-40 times. Id. at 308. Petitioner eventually stopped stabbing
6  her after she told him she "was getting tired of being stabbed" and she "was going to bleed to death
7  anyway" and "that he could go." Id. at 310. After Petitioner left, the victim, thinking she was going
8  to die, wrote a note saying that "Aaron from the steam cleaners had done this to me." Id. at 311.

9       As further pointed out by Respondent, Petitioner's alibi was directly contradicted by his
10 sister-in-law. Petitioner testified that on the night of the incident, he had gone to bed with his wife at
11 around 12:00 a.m. after watching television with his wife and sister-in-law. See Lodged Doc. No. 34
12 at 499. He woke up around 4:00 a.m. and felt hungry so he took his wife to Denny's for breakfast. Id.
13 His sister-in-law had declined to join them. Id. Petitioner's sister-in-law testified that she, Petitioner
14 and Petitioner's wife had watched television that night. Id. at 503. She stated that around 12:00 a.m.,
15 she went to take a shower while Petitioner and his wife went into their bedroom. Id. After exiting the
16 shower, however, she saw that Petitioner had changed into his work clothes and was walking around
17 in the house. Id. She also saw that the lights were on in Petitioner's truck. Id. Since they were shining
18 through her window, she closed her blinds. Id. She then heard the truck leaving as the lights went
19 away from the window. Id. at 503-504. She went back into the kitchen, but no one was there and the
20 house was dark. Id. at 504.

21      Further, blood evidence on Petitioner's shoes tested consistently with the victim's blood but
22 not Petitioner's. See Lodged Doc. No. 35 at 632. Also, Petitioner's shoes matched the shoe print trail
23 left at the restaurant in both tread pattern and measurement. Id. Even the letters "R-E-E-B-O-K"
24 from Petitioner's shoes matched the prints left on the floor. Id. at 635.

25      In addition to the overwhelming evidence against Petitioner, the evidence he now submits is
26 highly suspect. As noted by Respondent, Petitioner has an extensive history of forging documents.
27 For example, the investigating officer received a letter at headquarters from the Fresno County Jail
28 which informed him "how stupid [he] was for arresting the wrong person," that "there was

somebody else in jail that had done these things," and that the individual "had been provided with some keys that allowed [him] access to Carl's Junior." See Lodged Doc. No. 34 at 507-508. An identification expert testified that a fingerprint on the letter matched Petitioner's right thumb. Id. at 571, 573.

On another occasion, nearly two months after the incident a letter addressed to the victim was tacked on a bulletin board at the Carl's Jr. restaurant. See Lodged Doc. No. 33 at 332. The letter was purportedly from a man named Eric who claimed responsibility for the crime. See Lodged Doc. No. 35 at 652. The letter also warned the victim to tell the police that Petitioner was not the perpetrator or the author would "finish [her] off." Id. This letter was also examined by an expert. See Lodged Doc. No. 34 at 520-521. The expert opined that the writing was disguised but found it more probable than not that Petitioner had in fact authored the letter. Id. at 532.

In addition to these instances of forgery, Petitioner also committed several acts of forgery while incarcerated. During a parole hearing, a parole commissioner noted that Petitioner had forged a staff member's signature and had used another inmate's name to gain unauthorized access to a telephone. See Lodged Doc. No. 18, Exhibit A at 31. Petitioner had also authored a letter to the Fresno County District Attorney's Office which falsely stated that Petitioner's family had contacted the victim and the victim favored release and would write a letter to the parole board on Petitioner's behalf. Id. at 45-48. Last, Petitioner had committed forgery to circumvent restrictions on family visitation. Id. at 49.

The evidence Petitioner now submits is very questionable and suspect. Petitioner fails to state how he has now come into possession of these documents. The purported confession by an unidentified police officer is unsigned and only bears the attestation of Petitioner as to its veracity. Some of the documents have questionable slanted typing, and much of the information within these documents is conflicting. In sum, given Petitioner's extensive history of committing forgery, the highly suspect documents he has unexplainedly obtained and now submits, and the sheer weight of the evidence against him, there is no question that Petitioner has failed to demonstrate that he is actually innocent of the crime.

E.  Equitable Tolling

The limitations period is subject to equitable tolling if the petitioner demonstrates: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); see also Irwin v. Department of Veteran Affairs, 498 U.S. 89, 96 (1990); Calderon v. U.S. Dist. Ct. (Kelly), 163 F.3d 530, 541 (9th Cir. 1998), citing Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996), cert denied, 522 U.S. 814 (1997). Petitioner bears the burden of alleging facts that would give rise to tolling. Pace, 544 U.S. at 418; Smith v. Duncan, 297 F.3d 809 (9th Cir.2002); Hinton v. Pac. Enters., 5 F.3d 391, 395 (9th Cir.1993). Here, the Court finds no reason to equitably toll the limitations period.

**RECOMMENDATION**

Accordingly, the Court HEREBY RECOMMENDS that the motion to dismiss be GRANTED and the habeas corpus petition be DISMISSED with prejudice for Petitioner's failure to comply with 28 U.S.C. § 2244(d)'s one year limitation period.

This Findings and Recommendation is submitted to the Hon. Oliver W. Wanger, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.

Within thirty (30) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections.  The Finding and Recommendation will then be submitted to the District Court for review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   January 13, 2009**               /s/ Sandra M. Snyder
                                      UNITED STATES MAGISTRATE JUDGE